UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY GONZALES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | No. 1:19-cv-01377-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

### I.　　Introduction

Plaintiff Rosemary Gonzales ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disabled widow's benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 17, 18, 20. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

### II.　　Procedural Background

On August 13, 2015 Plaintiff filed an application for disabled widow's benefits and supplemental security income claiming disability beginning March 13, 2014 due to fibromyalgia, constant pain, sciatic pain from hips to legs, bulging discs in lower back causing neck and back pain, limited mobility, restricted range of motion, depression, anxiety, headaches and dizziness. AR 298–306; 331–32. The Commissioner denied the application initially on January 7, 2016, and on reconsideration on June 29, 2016. AR 161–72; 176–90.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 and 8.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 13, 2018. AR 33–70. Plaintiff was represented by counsel at the hearing. AR 33. On October 1, 2018, the ALJ issued a decision denying Plaintiff's application. AR 12–32. The Appeals Council denied review on June 4, 2019. AR 7–11. On September 30, 2019 Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff (born November 1959) completed school through the 10th grade. AR 40. She previously worked as a retail cashier and assistant manager. AR 42. She handled scheduling but did not hire or fire people. AR 42. She had previously been involved in three car accidents. AR 59–60. She had sciatica and back pain radiating from her neck to her arms and legs. AR 45. She sometimes needed help getting out of bed. AR 45–46. She could not comb her hair or put it up. AR 46. She had a step-in shower with rails. AR 46. She needed help to put on underclothes. AR 46. She had a prescribed cane. AR 47. She answered affirmatively when asked if she used her cane all the time (AR 47) but subsequently testified she uses it sometimes, and doesn't want to become dependent on it. AR 66.

She required periodic breaks when walking, could sit 30 to 60 consecutive minutes and had to alternate between sitting and standing to relieve painful spasms. AR 47–48. She sometimes had to lie down to relieve spasms. AR 48. She could do dishes for five minutes at a time. AR 48. She had difficulty bending and required frequent help from her granddaughter for things like dressing. AR 48–49. She could lift five pounds. AR 50. She drove occasionally up to three miles at most. AR 49, 54. Her family members ran errands for her. AR 50. She ordered groceries online and sent a family member to pick them up. AR 50. She lived alone but her family members lived around the block and helped her daily. AR 52. She had fifteen grandchildren who did her chores for her. AR 53. She was unable to take her grandchildren to places like the zoo. AR 53.

She took Lyrica and Cymbalta for fibromyalgia which helped but caused sleepiness. AR 55, 57–58. She took Metformin for diabetes which caused stomach upset, dizziness and nausea. AR 55, 57. She took medication for depression and anxiety which helped, but she tried to take it

as little as possible. AR 55–56. She had migraines three times a week which caused vomiting. AR 58. She took prescription strength Tylenol for migraines. AR 58. She had to lay in a dark room to relieve eye strain during a migraine, and it would take two hours to feel relief. AR 59.

### B. Medical Records

Plaintiff was involved in a car accident on March 4, 2014 (shortly before her March 13, 2014 disability onset date) after which she reported headaches and pain in her back, hip, arms and neck. 433. Between March 2014 and June 6, 2014, Plaintiff's physician completed numerous work status reports indicating temporary total disability or partial disability with extensive physical limitations. AR 436–42.

Lumbar spine MRI results dated May 5, 2014 showed mild to moderate posterior disk protrusions at L2-L3, L3-L4 and L4-5. AR 450–51. November 14, 2014 treatment notes indicated lumbar tenderness and Plaintiff was prescribed Lidoderm 5%. AR 543. A November 14, 2014 x-ray of the lumbar spine found moderately severe loss of disc height at L3-L4 and L4-L5 levels, mild loss of disc height at the mid lumbar region, and moderate facet degenerative changes of the mid and lower lumbar spine, among other clinical findings. AR 554.

March 3, 2015 examination findings documented tenderness of the cervical and lumbar spine. AR 538. Plaintiff was diagnosed with chronic neck pain, back pain, muscle spasm and fibromyalgia and prescribed Cymbalta and Amitriptyline. AR 535–38. A July 22, 2015 cervical spine x-ray revealed mild loss of disc height at C5-C6 with endplate osteophyte. AR 552. February 2016 treatment records noted tenderness of the cervical and lumbar spine. AR 632. Plaintiff was prescribed a cane and referred for pain management. AR 633. March 2016 pain management consultation examination findings noted 2/5 strength in the bilateral lower extremities; trigger points; generalized musculoskeletal pain with hyperalgesia; and, ambulation with a cane. AR 638. She was diagnosed with generalized musculoskeletal pain secondary to fibromyalgia, chronic low back pain possibly secondary to lumbar degenerative disc disease and bilateral myocardial pain syndrome. AR 638.

An April 18, 2016 lumbar spine x-ray documented disc space narrowing at L3-4 and L4-5. AR 639. An August 15, 2016 MRI of the lumbar spine noted disc bulges, hypertrophic changes,

effusions, narrowing, osteophytes and protrusions at L2-L3, L3-L4 and L4-L5, among other clinical findings. AR 873–874.

Painful ROM in the cervical and lumbar spine was documented in a March 29, 2017 examination. AR 667. She was referred to a physical therapist and chiropractor and prescribed medication for pain, insomnia, fibromyalgia, anxiety and depression. AR 667, 671–672. Chiropractic examination noted abnormal cervical spine ROM and limited lumbar ROM. AR 676. She was diagnosed with segmental and somatic dysfunction of the thoracic, cervical and lumbar spine. AR 676. A June 12, 2017 lumbar spine x-ray noted multilevel disc height loss and anterolisthesis. AR 758.

Pain management records from July 2017 through April 2018 noted pain level 6/10 with medication and 10/10 without medication. AR 764. Contemporaneous examinations noted abnormal and painful lumbar ROM, decreased motor strength and 4/5 ankle dorsiflexion and hip abduction, among other clinical findings. AR 785. April 2018 imaging of the cervical and lumbar spine noted continued abnormalities. AR 875–76.

### C. Consultative Examinations; Opinions; Prior Administrative Findings

Dr. Georgis conducted a consultative orthopedic examination of Plaintiff on December 10, 2015. AR 619. He diagnosed chronic neck pain, chronic back pain with sciatica, and fibromyalgia by history. AR 622. He noted that she walked in a flexed forward posture at the waste, took short antalgic steps, but did not use a cane or other assistive device. AR 620. He noted tenderness and reduced ROM of the cervical and lumbar spine. AR 620–21. He noted negative straight leg raise test, normal ROM of extremities, normal muscle bulk and normal muscle tone. AR 621–22. He opined she could lift and carry 20 pounds occasionally and 10 frequently, could sit, stand and walk six hours in an eight-hour day and seldom perform postural activities. AR 623.

Dr. Lewis conducted a consultative psychological examination of Plaintiff on June 17, 2016. AR 646–51. Dr. Lewis noted that Plaintiff ambulates with the aid of her cane. AR 648. Dr. Lewis diagnosed "other specified depressive disorder, mild." AR 650. Dr. Lewis opined that Plaintiff did not appear to exhibit any symptoms that would impair her level of functioning. AR 650. Dr. Lewis opined that Plaintiff had no functional impairments. AR 650–51.

Regarding Plaintiff's physical condition, non-examining state agency medical consultants Drs. Kwun and Coleman reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively. AR 78–79; AR 121–22. Both opined that Plaintiff could lift and carry 20 pounds occasionally and 10 frequently, could sit, stand, and walk six hours in an eight-hour day, and could occasionally perform postural activities (except that Dr. Coleman opined Plaintiff could frequently perform some postural activities). AR 78–79; AR 121–22.

Regarding Plaintiff's mental condition, non-examining state agency medical consultant Dr. Solomon reviewed Plaintiff's medical file at the reconsideration level. AR 118–19. He opined that Plaintiff's affective disorder was non-severe, caused mild restriction of her activities of daily living but caused no difficulties maintaining social functioning, concentration, persistence or pace, and no repeated episodes of decompensation of extended duration. AR 119.

### D. **Vocational Expert**

A vocational expert ("VE") testified at the administrative hearing. AR 63–69. The ALJ questioned the VE regarding a hypothetical individual who could perform light work with the following exceptions: no climbing ladders/ropes/scaffolds; occasionally perform other postural activities; no concentrated exposure to: temperature extremes, dampness, vibration, very loud noise, and very bright lights; frequently perform forceful overhead pushing, pulling and reaching with bilateral upper extremities. AR 63. The VE opined that such an individual could not perform Plaintiff's past work as a manager (medium exertional level), or her past work as a sales clerk as actually performed (medium exertional level), but could perform her past work as a sales clerk as generally performed (light exertional level). AR 64. If the postural activities outlined in hypothetical one could be performed "seldom to occasional," as opposed to "straight out occasional," the VE's answers would not be impacted. AR 67. If the individual could not maintain regular attendance, no work would be available. AR 67.

Plaintiff's attorney then posed a hypothetical to the VE adding a limitation of only

occasional fine gross manipulative activities. AR 68. The VE testified that such a limitation would eliminate all available work. AR 68.

### IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not

only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### VI.    **The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of March 13, 2014. AR 17. At step two, the ALJ found that Plaintiff had the following impairments which were severe in combination: fibromyalgia; degenerative disc disease of the lumbar and cervical spine with bulging discs; myofascial pain syndrome; diabetes with neuropathy; migraine headaches; gastroesophageal reflux disease; and, hypothyroidism, depression and anxiety. AR 18. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with no climbing of ladders ropes or scaffolds, seldom to occasional performance of other postural activities, no more than frequent forceful overhead pushing, pulling, or reaching, and no exposure to extreme heat, cold, wetness, humidity, very loud noise, very bright lights or vibration. AR 22. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform her past relevant work as a department manager or sales clerk (as actually performed), but could perform work as a sales clerk as generally performed. AR 25–26. Accordingly, the ALJ found that Plaintiff had not been under a disability since March 13, 2014. AR 26.

### VII.  Issues Presented

Plaintiff contends that "the RFC is not based on substantial evidence of record that Ms. Gonzales suffers from depression and anxiety that in combination with her chronic and severe pain disorders cause marked non-exertional limitations in her ability to independently sustain basic functioning." Br. at 9, Doc. 17. Plaintiff also contends that "The RFC is not based on substantial evidence of record that Ms. Gonzales requires a medically-prescribed cane for ambulation." Br. at 17.

#### A.  Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional

capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### B.      Analysis

Plaintiff's argument regarding the legal sufficiency of the RFC analysis raises a variety of issues including:  1) the significance of the ALJ's step two finding that Plaintiff's impairments were severe in combination;  2) the appropriateness of the weight the ALJ assigned to the conclusions of the examining and non-examining psychiatric consultants, and the sufficiency of the ALJ's analysis of the combined effect of her mental and physical impairments; 3) whether a finding of more than mild limitations in the four functional areas under the paragraph B criteria would have impacted Plaintiff's RFC; 4) whether the ALJ accurately and completely characterized the testimonial evidence in concluding that Plaintiff had only mild limitations in the four functional areas under the paragraph B criteria; and, 5) whether the ALJ accurately and completely characterized the evidence regarding Plaintiff's need for a medically prescribed cane.

#### 1.      Step Two Severity Finding

Plaintiff emphasizes that the ALJ's step two finding of severity required the ALJ to consider her anxiety and depression at subsequent stages of the analysis. Br. at 9. Plaintiff contends, however, that "the ALJ committed harmful error by failing to account for these non-exertional limitations in later steps of the evaluation . . ." *Id.* Anxiety and depression are not non-exertional limitations. They are medical impairments which may or may not have caused non-exertional

9

limitations depending on the nature of the evidence. The pertinent evidence is discussed below. However, the ALJ's step two severity finding does not support an inference that Plaintiff had non-exertional limitations impacting her RFC. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting that step two is "a de minimis screening device [used] to dispose of groundless claims).

### 2.   **Weight Determinations; Combined Effect of Impairments**

Plaintiff questions the fact that the ALJ accorded significant weight to Dr. Solomon's conclusion that her mental impairments were non-severe in isolation but accorded little weight to Dr. Lewis's conclusion that her depression caused no significant limitations. Br. at 10. Plaintiff also contends that the ALJ did not discuss how her depression and anxiety were considered in combination with her other severe impairments. *Id.*

The ALJ gave little weight to Dr. Lewis's opinion because it was based on one examination and Dr. Lewis only had limited medical records available for review. AR 25. Although the ALJ ultimately reached a similar conclusion to the one offered by Dr. Lewis, the ALJ reached that conclusion based on other medical evidence and opinion evidence such as the opinion of Dr. Solomon who had a more complete medical file for review. Plaintiff offers no explanation as to why she believes this was improper.

Dr. Solomon's conclusion that Plaintiff's mental impairments were non-severe supported the ALJ's more moderate conclusion that Plaintiff's mental impairments were severe in combination with other impairments, but that the evidence ultimately did not support the inclusion of non-exertional limitations in her RFC. Plaintiff identifies no reason why the ALJ could not rely on Dr. Solomon's opinion and supporting medical record evidence while nevertheless reaching a different conclusion than Dr. Solomon did regarding severity.

Nor is there any apparent reason why Dr. Solomon's conclusion regarding non-severity of Plaintiff's mental impairment "in isolation" can't serve as substantial evidence supporting the ALJ's broader RFC determination. Dr. Solomon, Ph.D.,  was tasked with evaluating Plaintiff's mental condition, not her physical condition. Such opinion, even though not coming from a medical doctor,  is nevertheless appropriate evidence for the ALJ's consideration, and the Court is aware of

no exception for cases involving combined impairments. A non-examining opinion, such as Dr. Solomon's, may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ found Dr. Solomon's opinion consistent with the medical evidence upon which it was based, including: essentially normal mental status examinations throughout the record, no record of hospitalization for psychiatric treatment, no psychosis or suicidal ideation, and treatment with medication only. AR 24.

In addition to Dr. Solomon's opinion and the supporting medical evidence discussed therein, the ALJ also cited other evidence undermining the notion that Plaintiff's mental impairments caused non-exertional limitations, including: March 2017 and August 2017 primary care treatment notes reflecting full orientation with appropriate mood and affect, normal insight and normal judgment; the lack of evidence that Plaintiff ever visited a clinical social worker or behavior health provider notwithstanding her physician's recommendation that she do so; November 2017 records reflecting that the claimant denied depressed mood, difficulty sleeping or suicidal thoughts. AR 23. The ALJ also acknowledged contemporaneous records reflecting the opposite findings, but those records did not change his conclusion. *Id.* Remand is not warranted where the evidence supports two conclusions. *Jamerson*, 112 F.3d at 1066.

Plaintiff does not acknowledge or directly dispute the ALJ's extensive analysis of the evidence regarding Plaintiff's physical conditions (AR 20-25), including three out of three physician's opinions supporting the ALJ's RFC. Rather, Plaintiff's central contention is that the evidence of her anxiety and depression were not sufficiently brought to bear on the ALJ's analysis of the combined effect of all her impairments. Plaintiff offers minimal discussion of any such evidence other than her testimony which is discussed below. Further, Plaintiff's contention that the ALJ failed to consider the combined effect of her impairments is contrary to the record. Her claim proceeded past step two precisely because the ALJ considered the combined effect of independently non-severe impairments, and he evaluated evidence of all impairments at subsequent stages. AR 18. Thus, the ALJ clearly considered the combined effect of all impairments.

Granted, Plaintiff is correct that the ALJ's repeated emphasis of the importance of

considering the combined effect of impairments[2] perhaps set the stage for a discussion uniquely focused on "combined effects" rather than individual effects. Nevertheless, Plaintiff provides no theory or legal authority as to how the ALJ is supposed to go about articulating "combined effects" other than doing what the ALJ did here. The ALJ thoroughly analyzed the medical evidence, opinion evidence and testimonial evidence regarding each individual impairment and reached an overall conclusion on Plaintiff's corresponding limitations. Plaintiff identifies no error in that analysis.

### 3.    **Impact of Paragraph B Criteria on RFC**

Plaintiff contends that a finding of more than mild limitations in the four functional areas under the paragraph B criteria would have impacted her RFC and mandated a finding of disability pursuant to rule 202.02 of the medical vocational guidelines. Br. at 11. First, none of the opinion evidence supports a finding of more than mild limitations in the paragraph B criteria, and Plaintiff identifies no medical evidence to the contrary. Plaintiff only identifies testimonial evidence, which is discussed below.

Second, the ALJ's finding of mild limitations in those functional areas is a distinct inquiry from the RFC. The ALJ found that Plaintiff had mild limitations in the four broad categories of functional limitation considered during the special technique set forth at 20 C.F.R. § 404.1520a(c)(3), also known as "paragraph B criteria," including: understanding, remembering and applying information;[3] interacting with others; concentration, persistence and pace; and, adapting

---

[2] *See, e.g.,* AR 17 ("The claimant has the following impairments which are severe *in combination* . . . The medically *severe combination* of the above impairments caused more than minimal functional limitations . . . these impairments '*in combination*' are more than slight abnormalities and '*in combination*' cause more than minimal limitations . . . the claimant's medically determinable impairments, *in combination*, are severe."); AR 24 ("Dr. Kwun and Dr. Coleman did not give consideration to the effects of the claimant's impairments *in combination* . . . Dr. Georgis does not appear to have given consideration to the effects of the claimant's impairments *in combination* . . ."); AR 25 ("However, the opinion does not consider the impact of these impairments *in combination* with the claimant's physical impairments, and the undersigned finds that they *should be considered together*.") (emphasis added).

[3] The Paragraph B criteria the ALJ evaluated are actually derived from a revised version of 20

and managing one's self.  As SSR 96-8p explains, however:

> the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8, 1996 WL 374184, at *1.  These "itemized" functions include: understanding, carrying out and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and, dealing with changes in a routine work setting.  *See id* at *6.

None of the opinion evidence of record supports a finding of limitations in any of the work-related functional areas considered at the RFC stage.  Plaintiff does not explain how any medical evidence would support a finding of such limitations.

### 4.     ALJ's Characterization of Plaintiff's Testimony

Plaintiff contends that the ALJ did not accurately or completely capture her testimonial evidence in finding only mild limitations under the paragraph B criteria.  The ALJ cited Plaintiff's adult function report and noted that Plaintiff could prepare her own simple meals, do her household cleaning and laundry, drive during daylight hours, shop when needed, handle a checkbook and savings account, count change, attend family events periodically, regularly go to the bank and regularly go to her daughter's house. AR 19 (citing Exhibits 5E/7 through 5E/11, AR 375–79).  On the other hand, the ALJ also noted that Plaintiff needed her granddaughter's help paying bills, did not like to go out alone because she could get dizzy and hurt herself, preferred to order groceries

---

C.F.R. § 404.1520a(c)(3) (2017) which post-dated Plaintiff's application date. The version effective as of her application date contained slightly different criteria: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520(c)(3) (2011). Dr. Solomon evaluated the latter criteria. Neither party draws attention to this nor contends that it impacted the outcome.

electronically and have them picked up, had some difficulty maintaining focus with spoken instructions and had difficulty dressing and combing her hair. *Id.* On balance, the ALJ found only mild limitations in the four functional areas. A review of the cited exhibits (Plaintiff's adult function report) confirms that the ALJ accurately characterized the same.[4]

Plaintiff disagrees, contending as follows:

> Furthermore, a review of "Exhibit 5E/9," as a whole reveals, that Ms. Gonzales does not go out alone for fear of falling and stated she is *unable* to pay bills on her own (AR 377); and review of "Exhibit 5E/10," as a whole, reveals that Ms. Gonzales generally and vaguely stated she does go "to dinner" or "visit family members" she also states that she only does so "every two months and just sit and talk" and is unable to go out alone. (AR 378)

Br. at 15 (emphasis in original). Here however, the ALJ in fact acknowledged the very statements Plaintiff underscores from her function report, including her need for assistance paying her bills, that she visits family members periodically, and that she does not like to go out alone because she could get dizzy and hurt herself.[5]

Plaintiff also underscores oral testimony from the administrative hearing that she contends

---

[4] Plaintiff applies the "clear and convincing" standard to the ALJ's "rejection" of her testimony. Br. at 14 (citing *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002); *Trevizo v. Berryhill*, 871 F.3d 664, 678-682 (9th Cir. 2017)). However, Plaintiff was in fact quoting from and disputing the ALJ's step three finding concerning the severity of her impairments under the paragraph B criteria and the accuracy of the ALJ's description of her testimony in reaching that conclusion. Plaintiff does not discuss the ALJ's step four explanation for why her testimony did not support a finding of non-exertional limitations. In any event, to the extent the "clear and convincing" standard does apply, the Court finds the ALJ's reasoning at step three clear and convincing as he fairly characterized the content of her adult function report, notwithstanding Plaintiff's contention to the contrary.

[5] There were some subtle differences between the ALJ's description and Plaintiff's actual function report. Whereas he stated she attended family events "periodically," Plaintiff's function report states that she did so "maybe two months apart." AR 378. Whereas the ALJ stated Plaintiff does not "like to" go out alone, her function report reflects that she "*need[s]* someone to accompany [her]," meaning it was a necessity not a preference. AR 378. Plaintiff did not identify these subtleties or contend they are outcome determinative. Rather, Plaintiff suggests that the ALJ simply focused on the testimony concerning her capabilities and ignored her statements about her difficulties, which is not an accurate assessment of the ALJ's reasoning. The ALJ considered statements regarding capabilities and difficulties and concluded that Plaintiff's statements as a whole only supported mild limitations in the four functional areas.

supports a finding of greater limitations than the statements in her function report. However, remand is not warranted where the evidence supports two conclusions. *Jamerson*, 112 F.3d at 1066.

### 5. Evidence Regarding Medically Prescribed Cane

Finally, Plaintiff contends that the ALJ mischaracterized and/or overlooked evidence regarding her medically prescribed cane. Plaintiff quotes the discussion she had during the hearing with the ALJ, which the Court agrees was a bit unusual:

> ALJ: You know there's been some dispute regarding this cane that you have. There's been times when you've needed a cane, been prescribed a cane, and there's been other times when you weren't using the cane, and whether it was prescribed for you or no, or any other assistive device. Do you have a cane with you here today?
>
> Ms. Gonzales: Yes sir.
>
> ALJ: Yes, you do. But do you feel like you need it?
>
> Ms. Gonzales: This morning I was folding my blanket, and I pulled a muscle in my back…
>
> ALJ: And, in particular, you needed it today, huh?
>
> Ms. Gonzales: Yeah.
>
> ALJ: And is it also kind a security blanket?
>
> Ms. Gonzales: Yea, it is.
>
> ALJ: Kind of like protection?
>
> Ms. Gonzales: Yes.
>
> ALJ: If somebody said something rude to you, or something, you can smack them real quick with it, or something? No?
>
> Ms. Gonzales: No.
>
> ALJ: You've never done that, have you?
>
> Ms. Gonzales: No.
>
> ALJ: But if you hadn't hurt your side, you wouldn't be using the cane right now, is that true?
>
> Ms. Gonzales: I use it sometimes, yea.
>
> ALJ: Sometimes you use it; sometimes you don't?

>Ms. Gonzales: Yea, sometimes I do, I don't want to get dependent on it.
>
>ALJ: Oh really?
>
>Ms. Gonzales: Yea, but, I pulled a muscle today.
>
>ALJ: You try not to use it unless you absolutely need it.
>
>Ms. Gonzales: Yes.

AR 65–66. Subsequently, the ALJ stated in his written opinion that Plaintiff was prescribed a cane but that "she does not use the cane at all times and it is a 'security blanket' rather than a constant necessity." AR 22. Indeed, as Plaintiff emphasizes, the term "security blanket" came from the ALJ, not Plaintiff.[6]

Nevertheless, Plaintiff did independently state that she uses the cane "sometimes," in contrast to her earlier testimony that she uses it "all the time." AR 47, 66. She also answered affirmatively when asked if she tries not to use it unless she absolutely needs it. AR 66. As the ALJ stated, the medical evidence was also split regarding her use of the cane. Whereas June 17, 2016 examination notes reflect that Plaintiff ambulated with the aid of her cane (AR 648), December 10, 2015 examination notes reflect that she did not use a cane or other assistive device (AR 620). Remand is not warranted where the evidence supports two conclusions. *Jamerson*, 112 F.3d at 1066.

Plaintiff contends that the evidence nevertheless establishes that she requires the cane "at least 50%" of the time which would limit her to sedentary work if incorporated in her RFC. However, she did not testify that she required her cane at least 50% of the time, nor would such testimony establish a medical requirement where her doctor's prescription contains no information beyond "DME for cane sent today" (AR 629, 633). *See* SSR 96-9p (requiring "medical

---

[6] It is also worth noting that the ideal time for the ALJ to introduce levity and humor into the proceedings was probably not during the same line of questioning the ALJ ultimately used as a basis to exclude the cane requirement from Plaintiff's RFC. *See* AR 66 ("If somebody said something rude to you, or something, you can smack them real quick with it, or something? No? . . . You've never done that, have you?"). This was not the only instance of statements which blurred the distinction between friendly banter and sworn testimony.

documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.")) (emphasis added).

### VIII. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Rosemary Gonzales.

IT IS SO ORDERED.

Dated:  **February 20, 2021**                          **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE